# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5569-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THERESA MULLEN,

     Defendant-Appellant.

_____

> Argued September 30, 2020 – Decided October 14, 2020
>
> Before Judges Haas, Mawla, and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. 2017-23.
>
> Theresa Mullen, appellant, argued the cause pro se (Russell M. Woods and Susan B. McCrea, on the briefs).
>
> Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

PER CURIAM

On February 10, 2017, a parish priest at The Church of Saint Theresa in Kenilworth filed a municipal complaint against defendant, charging her with the petty disorderly persons offense of defiant trespass, N.J.S.A. 2C:18-3(b). The Assignment Judge transferred the matter to the Law Division.

Following a two-day bench trial, the judge rendered a detailed written decision on February 28, 2018, finding defendant guilty of defiant trespass. At sentencing, the judge ordered defendant to pay $558 in fines and court costs. On July 12, 2018, the judge denied defendant's motion for a new trial.

Defendant's subsequent notice of appeal to this court was limited to the July 12, 2018 order denying her motion for a new trial. Over sixteen months later, defendant filed a motion with this court to set aside the verdict based on allegedly new video evidence. On February 24, 2020, we remanded the matter to the trial judge to review the evidence and determine whether the guilty verdict should be reconsidered. On March 30, 2020, the judge entered an order and statement of reasons denying the motion to reconsider the prior verdict. Defendant did not file an amended notice of appeal challenging this decision.

On appeal, defendant raises the following contentions:

POINT I

THE EVIDENCE DEMONSTRATES THAT THIS CASE WAS FILED AND PROSECUTED FOR AN IMPROPER PURPOSE AND THAT THE TRIAL COURT IMPROPERLY PERMITTED THE ATTORNEY IN THE PENDING CIVIL LITIGATION TO HAVE AN ACTIVE ROLE IN THE CITIZEN[']S COMPLAINT WHICH IS AGAINST THE RULES OF PROFESSIONAL RESPONSIBILITY AND THEREFORE THE CHARGE MUST BE DISMISSED.  (Not raised below).

POINT II

THE TRIAL [JUDGE'S] ACTIONS, WORDS, AND WRITTEN OPINION PUBLISHED ON THE JUDICIARY WEBSITE CLEARLY DEMONSTRATE[] THAT:  1) HE WAS BIASED AGAINST [DEFENDANT]; 2) HE USED WORDS TO DE[S]CRIBE HER CONDUCT THAT ARE ENTIRELY UNSUPPORTED BY THE RECORD; AND, 3) HE IGNORED EXCULPATORY EVIDENCE TO SUPPORT HIS GUILTY FINDING. (Not raised below).

POINT III

THE CLAUSE AT ISSUE IN THE [SAINT THERESA SCHOOL (STS)] HANDBOOK IS UNENFORCEABLE AS A MATTER OF LAW BECAUSE IT IS UNCONSCIONABLE, VIOLATIVE OF THE EQUAL ACCESS RIGHT UNDER THE CONSTITUTION AND AGAINST PUBLIC POLICY AND THEREFORE THE CHARGES AGAINST [DEFENDANT] MUST BE DISMISSED.

3

A-5569-17T4

POINT IV

THE STS HANDBOOK CLAUSE FAILS TO ADDRESS EXPULSION, THE EXPULSION OF S.P. AND K.P. VIOLATES NEW JERSEY LAW AND THE SUDDEN EXPULSION OF S.P. AND K.P. AND IMMEDIATE THREATS OF TRESPASS VIOLATED [DEFENDANT'S] DUE PROCESS RIGHTS AND THE CHARGES MUST BE DISMISSED AS A MATTER OF LAW.

POINT V

THE TRIAL COURT ERRED IN QUASHING THE SUBPOENA OF [MONSIGNOR] NYDEGGER WHO SUBMITTED A CERTIFICATION IN THE CIVIL LAWSUIT THAT THE ARCHDIOCESE AND STS WERE TWO SEPARATE AND DISTINCT ENTITIES WHICH WOULD HAVE DEMONSTRATED TO THE TRIAL COURT THAT THE ARCHDIOCESE DID NOT HAVE ANY LEGAL AUTHORITY TO MAKE THE EXPULSION DECISION OR TO TELL [DEFENDANT] SHE HAD TO LEAVE THE PREMISES[.] THEREFORE THE TRESPASS CHARGES SHOULD BE DISMISSED AS A MATTER OF LAW.

POINT VI

THE TRIAL COURT'S RELIANCE ON STATE V. BRENNAN[, 344 N.J. SUPER. 136 (APP. DIV. 2001)] TO SUSTAIN A CONVICTION WAS IN ERROR.

POINT VII

THE COMPLAINT MUST BE DISMISSED ON APPLICATION OF THE DOCTRINE OF NECESSITY[,] N.J.S.A. 2C:3-2 (Not raised below).

A-5569-17T4

THE ELEMENTS OF DEFIANT TRESPASS WERE NOT SATISFIED BEYOND A REASONABLE DOUBT.

After reviewing the record in light of the contentions advanced on appeal, we affirm defendant's conviction and sentence.

I.

Defendant and her husband, Scott Phillips, are the parents of two daughters, S.P. and K.P.,[1] who attended STS in the Archdiocese of Newark (Archdiocese).[2] In December 2016, Phillips filed a complaint seeking injunctive relief on behalf of S.P. and B.P. against STS and the Archdiocese. Phillips alleged that STS improperly addressed S.P.'s complaints concerning bullying by other students, wrongfully prevented B.P. from being named the eighth grade class valedictorian when he attended the school,[3] and refused to allow S.P. to play on the boys' basketball team after the girls' team was unable to field a squad.

---

[1] We use initials to identify the children in order to protect their privacy.

[2] Defendant and Phillips' son, B.P., previously attended the school.

[3] When the complaint was filed, B.P. was already attending high school.

By filing this complaint against STS, Phillips violated a provision in the school's handbook, which stated that "[i]f a parent implicates [STS] in a legal matter, or names [STS] as a defendant in a civil matter, the parent/guardian will be requested to remove their children immediately from the school." Phillips previously signed a receipt for the STS handbook in which he acknowledged that he had read and understood all of its provisions and that it was "binding on the students and parents during the current academic year."

On February 1, 2017, the Archdiocese Superintendent of Schools sent a letter to defendant and Phillips citing the provision of the handbook permitting the removal of the children from the school based on Phillips' lawsuit. The letter advised defendant and Phillips that "[b]ased upon your ongoing lawsuit against [STS], pursuant to this provision of the [h]andbook[,] you are hereby requested to remove [S.P. and K.P.] from the school immediately." Defendant received the letter at her home on the evening of February 1, 2017.

"[T]o avoid any confusion" as to the intent of the letter, the attorney for the Archdiocese and STS also emailed the letter to Phillips' attorney, who forwarded the email to defendant and her husband. Defendant reviewed the email on the evening of February 1. The email plainly stated that "neither [S.P. nor K.P.] should be coming to [STS] tomorrow morning or any day thereafter."

That same night, the principal of STS, Deacon Joseph Caparoso, notified the parish priest, Father Joseph Bejgrowicz, that he should come to the school on February 2, 2017 to lend support in the event that defendant and her husband ignored the Superintendent's directive. In turn, Father Bejgrowicz reached out to Police Chief John Zimmerman to apprise him of the situation. Chief Zimmerman assigned Detective James Grady and the school's resource officer, Brian Piktin, to go to the school when it opened on February 2.

On February 2, Detective Grady and Officer Piktin met with Deacon Caparoso and Father Bejgrowicz, who advised the officers that defendant, her husband, and the children were not permitted on the property. At approximately 8:00 a.m., the group observed defendant, Phillips, and their two children approaching the rear-door of the school from the parking lot. The principal and the priest returned to the office.

Detective Grady spoke to defendant. Defendant stated that she wanted to speak with the administration about the situation. The detective conveyed that message to Deacon Caparoso, who stated that defendant could come to the office. By that time, Phillips had left STS because he had to take B.P. to his high school.

A-5569-17T4

Defendant went into the office with Deacon Caparoso, Father Bejgrowicz, and the assistant parish priest, Father Vincent D'Agostino. By that time, Chief Zimmerman had also arrived at the school office to "try[] to keep the peace." Detective Grady and Officer Piktin remained outside the office with the two children.

Shortly before the meeting in the office started, defendant began video-recording the individuals she encountered with her cell phone. This recording began at 8:09 a.m.

Once defendant entered the office, Deacon Caparoso read her the following statement that had been drafted by the Archdiocese's and the school's attorney:

> After consulting with the counsel for the Archdiocese, we understand that you refuse to withdraw the children from the school as you've been requested to do pursuant to the student handbook that you signed on August the 16th, 2016. Therefore, the children are expelled. You must leave the premises immediately. If you refuse to comply, then you'll be considered trespassing.

Instead of leaving as she had been directed, defendant responded:

> Then you guys can bring criminal charges against us, because . . . I didn't sign that, but [Phillips] had to take my son to school, so . . . . I want to be clear, this is being recorded. So everything that everybody says is recorded. That's fine. I will not -- the handbook says

that we can be requested to leave the school. We're denying that request. So if the police want to arrest me and my children for trespassing, they can go ahead and do that. Without a court order, I'm not leaving these premises and my children are not leaving the premises.

Defendant continued to refuse to leave the school, and stated:

So if the Archdiocese wants to say that we're trespassing, they are in their rights. If St. Theresa's wants to sign a complaint that I'm trespassing and my children are trespassing and my husband is trespassing, then I guess St. Theresa's can do that. But I'm not leaving here, and my children aren't leaving here. So if that's the way St. Theresa's wants to go, then that's the way St. Theresa's wants to go.

Father D'Agostino attempted to reason with defendant by stating that she should permit the attorneys for the two parties to discuss the matter or let Phillips address it after defendant replied she did not have her own attorney because she was not a party to the civil lawsuit her husband had brought against the Archdiocese and STS. Defendant rejected these overtures.

At that point, Father D'Agostino asked defendant to leave the office so that he and the other school and parish officials could contact their attorney. Defendant went into the hallway outside the office. She stopped video-recording her interactions. It was then 8:33 a.m.

After contacting their attorney, the school and parish administrators again advised defendant that she had to leave the building. She refused. When Chief

9

Zimmerman told defendant that Deacon Caparoso and Father Bejgrowicz said she was not welcome at the school, defendant replied that "she would not leave unless she was handcuffed and forced to leave the premises." Defendant also stated "that she wouldn't leave unless a criminal complaint was signed." Chief Zimmerman spoke to Father Bejgrowicz, who agreed to file a written complaint against defendant for defiant trespass. Chief Zimmerman's account was corroborated by Deacon Caparoso, Father Bejgrowicz, Father D'Agostino, and Detective Grady.

Chief Zimmerman told defendant he was reluctant to arrest and handcuff her in front of her children. Chief Zimmerman explained:

> [W]e were kind of handling everybody with ki[d] gloves, because we know everybody personally. I wouldn't have been there for an hour and ten minutes, or an hour. Somebody else would probably, unfortunately would have been arrested much sooner and dragged out of there. But I didn't think that was the right thing to do and I was trying to keep the peace.

However, because defendant was not leaving voluntarily, Chief Zimmerman called for an uniformed officer to come to the school to remove defendant. It was now 8:47 a.m.

Officer Sean Kaverick arrived at the school a few minutes later. He briefly conferred with Chief Zimmerman and the two other officers in the lobby, and

then went to speak to defendant who was in the hallway between the office and the gym. Officer Kaverick told defendant that she had to leave the premises. Defendant "didn't want to leave" and asked Officer Kaverick to "basically put the handcuffs on her if you're going to take me out."

Officer Kaverick did not want to handcuff defendant in front of the children, and continued to ask her to walk outside with him. Defendant remained in the hallway for approximately five more minutes. Finally, defendant accompanied the officer to the front door stairs outside the school, but she refused to leave the property.

At that point, Phillips returned to the school. Officer Kaverick went out to meet him as he approached the school, and asked for his assistance in getting he and his wife "to leave peacefully." Officer Kaverick told Phillips that he did not want to handcuff defendant in front of the children, and Phillips "agreed with [him]."

By that time, defendant had begun video-recording again, but this recording only lasted approximately one minute. The recording reveals that one of the parish officials told Phillips that he was trespassing and had to leave. As Phillips began to argue with Father D'Agostino, defendant told him to "[s]top it"

A-5569-17T4

and the recording ended. Defendant left the school with Phillips shortly after 9:00 a.m., over an hour after she arrived there.[4]

Defendant testified on her own behalf and her account differed greatly from the other witnesses. Defendant asserted that she was not bound by the handbook because only Phillips had signed the receipt for it. She also claimed that because the handbook stated that parents would be "requested to remove their children immediately from the school" in the event of violation, she was free to "deny" the request and bring the children to the school.

Defendant testified that she stopped video-recording the events when she left the office at 8:33 a.m. Contrary to the testimony of the other witnesses, defendant stated she went outside of the school at that time to call Phillips, and remained outside of the school until Phillips returned. She did not testify that she spoke again with Chief Zimmerman, Father Bejgrowicz, or anyone else after

_____

[4] In the afternoon of February 2, 2017, Phillips filed an emergent motion in his civil action against the Archdiocese and STS seeking to have S.P. and K.P. returned to the school. The trial court denied this motion but, the next day, we granted Phillips' emergent motion for a stay of the expulsion. While the stay was still in place, the Archdiocese and STS rescinded the expulsion on February 15, 2017.

A-5569-17T4

she left the building. Defendant also testified that she "never had any conversation with Officer Kaverick."[5]

In his thorough written decision, the judge found that defendant's testimony at trial was "incredible." Instead, he credited the testimony of the State's witnesses that defendant steadfastly refused to leave the school after being told by three police officers, the school principal, and two parish priests to do so. The judge found that the accounts of these witnesses was fully corroborated by the video-recording that defendant made of the first part of their meeting in the school office, which bolstered their credibility as to what transpired after the parish officials contacted their attorney.

The judge was particularly impressed with the credibility of Officer Kaverick, who testified that he encountered defendant in the hallway and asked her to leave. Defendant refused to do so unless she was handcuffed. She remained inside the school for another five minutes before reluctantly exiting.

Defendant was not able to overcome the "chasm" that existed between her testimony and that provided by Officer Kaverick. The judge found that defendant "was combative and evasive on the stand, and her statements about her understanding of the letter and the import of the signed acknowledgment

---

[5] Defendant did not call any other witnesses at the trial.

further undermine[d] her credibility." In this regard, the judge found that by claiming she could "deny" the school's "request" to withdraw the children from the school, defendant had "engaged in grammatical and linguistic gymnastics in an attempt to minimize and disregard the clear import and language of the communication[s]" made to her by the Archdiocese and its attorney. The judge also ruled that Phillips' signature on the handbook receipt plainly bound both parents to follow its directives.

Citing N.J.S.A. 2C:18-3(b), the judge noted that in order to sustain a conviction for defiant trespass, the State had to prove beyond a reasonable doubt that defendant knew she was "not licensed or privileged" to enter or remain at the school in the face of the "[a]ctual communication" given to her. After reviewing all of the evidence, the judge concluded that the State met this burden based upon the Archdiocese's February 1, 2017 letter; the email the Archdiocese's attorney sent to Phillips' lawyer that was forwarded to defendant and Phillips on that same date; and the repeated demands of the principal, the two priests, and the three police officers that defendant leave the school. When defendant failed to accede to these requests, she violated N.J.S.A. 2C:18-3(b).

Defendant thereafter filed a motion for a new trial under Rule 7:10-1. She raised three issues as a basis for a new trial: vindictive prosecution, entrapment,

and a failure to establish the elements of trespass. After hearing oral argument, the judge considered and rejected each of these contentions in a concise oral opinion.

The judge reiterated his conclusion that defendant "was not credible at all" during her trial testimony, and noted that she presented no evidence to support her claim that Father Bejgrowicz filed the complaint against her in an attempt to gain leverage over Phillips in the civil lawsuit, or that the Archdiocese's lawyer had improperly participated in the criminal proceedings. The judge also found that defendant had not been entrapped into going to the school on February 2, 2017, and then remaining there after being repeatedly told she was trespassing. Instead, defendant made the decision to go to, and remain at, the school in defiance of the Archdiocese's and the school's directives. Finally, the judge again found that the credible evidence presented at the trial fully supported his conclusion that defendant committed defiant trespass in violation of N.J.S.A. 2C:18-3(b).

As noted above, defendant more recently filed a motion to vacate the conviction based on new video evidence. We remanded the matter to the trial judge who, after reviewing the evidence, found there was no basis to alter his prior conclusions.

A-5569-17T4

In a detailed statement of reasons, the judge found that the allegedly new evidence consisted of five items: (1) "a video showing the Mullen family arriving at the school on the day in question" in which "you can see the defendant asserting the position that she would not accede to the Diocese's 'request' that her children not attend the school"; (2) "a series of photographs"; (3) "a very short video that is unintelligible"; (4) "a video discussing the defendant's son's potential for being late to his school"; and (5) "a conversation between the defendant and her husband [that] shows the husband entering his vehicle." The videos were taken by Phillips on February 2, 2017 at the school.

Although "these videos were available to the defendant at the time of the trial and not presented," the judge ruled "that none of the newly proffered material warrants a reconsideration of the court's initial decision." The judge further explained that he based his findings on the conversations that occurred between defendant and the school and parish officials, and that the recordings "shed no light on what transpired therein." This evidence also did not contradict Officer Kaverick's "clear and unequivocal testimony." Therefore, the judge denied defendant's motion to reconsider the verdict.

A-5569-17T4

## II.

We begin by addressing defendant's argument in Point VIII that the State failed to prove the elements of defiant trespass beyond a reasonable doubt. Our review of a judge's verdict following a bench trial is limited. The standard is not whether the verdict was against the weight of the evidence, but rather "whether there is sufficient credible evidence in the record to support the judge's determination." State in the Interest of R.V., 280 N.J. Super. 118, 121 (App. Div. 1995).

Moreover, we are obliged to "give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

17

Similarly, the judge's decision to deny defendant's motion for a new trial is subject to a deferential standard of review. Rule 7:10-1 provides that municipal courts may "grant the defendant a new trial if required in the interest of justice."[6] "[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (alteration in original) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)). Appellate courts "are restricted to the test of 'whether the findings made [by the trial court] could reasonably have been reached on sufficient credible evidence present in the record.'" Russo, 333 N.J. Super. at 140 (alteration in original) (quoting Locurto, 157 N.J. at 472).

Applying these standards, we are satisfied there is ample evidence in the record to support the judge's conclusion that defendant was guilty of defiant trespass under N.J.S.A. 2C:18-3(b). As the judge found, defendant knew she was not welcome at the school when she received the Archdiocese's letter and the email from her attorney on February 1. As soon as she entered the meeting

---

[6] It is undisputed that the motion was governed by Rule 7:10-1, because the petty disorderly defiant trespass charge had been transferred to the Law Division due to a conflict of interest.

with Deacon Caparoso in the school office, he clearly told her that she had to leave or she would be "considered trespassing."

At that point, defendant's own video-recording confirms that she immediately told the officials that they could "bring criminal charges against" her, but she was not going to leave the premises. After the officials spoke to their attorney, they again repeatedly directed defendant to exit the property, and she consistently refused. Finally, Officer Kaverick was able to persuade defendant to go outside rather than be arrested and handcuffed in front of her children.

Thus, the State established beyond a reasonable doubt that defendant knew she had no right to be at the school, yet she remained there without any license or privilege to do so. That is all that is required to support a conviction under N.J.S.A. 2C:18-3(b). State v. Brennan, 344 N.J. Super. 136, 143-44 (App. Div. 2001). Therefore, we reject defendant's contention on this point.

### III.

In Point VI, defendant argues that the judge erred by relying upon our decision in Brennan in his written decision. This argument also lacks merit.

The judge cited Brennan at the beginning of his opinion and stated that it "establishe[d] the parameters in evaluating the evidence in this case to determine

whether [defendant] was guilty of violating the law." In <u>Brennan</u>, the defendant attended a public town council meeting and was allotted three minutes of speaking time to address his concerns. <u>Id.</u> at 139. However, he refused to sit down when his time expired. <u>Ibid.</u> The mayor warned the defendant that if he did not sit down, the police would be called. <u>Ibid.</u> The defendant again refused to leave, and the mayor summoned the police. <u>Id.</u> at 139-40. The police arrested the defendant after he declined to leave when they directed him to do so. <u>Id.</u> at 146. Under these circumstances, the defendant was convicted of defiant trespass. <u>Id.</u> at 138.

On appeal, we found that the State satisfied all of the elements of N.J.S.A. 2C:18-3(b), and we affirmed the defendant's conviction. <u>Id.</u> at 146. We held that once the defendant was ordered to leave the premises by the police, he "had no discretion to disobey that direction." <u>Ibid.</u> We found that although the defendant was lawfully on the premises at first, his privilege to remain was later revoked. <u>Ibid.</u>

Defendant asserts that the court's reasoning in <u>Brennan</u> does not apply in this case because, unlike the defendant in <u>Brennan</u>, she was not arrested on the property, but rather left "voluntarily." However, this is a distinction without a difference.

Nothing in N.J.S.A. 2C:18-3(b) or in Brennan requires that the defendant be arrested in order to sustain a conviction. Moreover, the police were poised to arrest defendant when she continually refused to leave the school, but they were hesitant to do so in front of her children. After Father Bejgrowicz stated that he would file a written complaint against defendant, the police no longer needed to arrest her on the scene. Although defendant again demanded that she be handcuffed, Officer Kaverick was ultimately able to persuade her to go outside and later exit the property. Under these circumstances, the judge correctly found defendant guilty of defiant trespass.

IV.

In Point VII, defendant alleges for the first time on appeal that her actions were justified by the "doctrine of necessity." We disagree.

"The 'necessity' defense is based on public policy." State v. Romano, 355 N.J. Super. 21, 29 (App. Div. 2002). "Conduct that would otherwise be criminal is justified if the evil avoided is greater than that sought to be avoided by the law defining the offense committed, or, conversely, if the conduct promotes some value higher than the value of compliance with the law." State v. Tate, 102 N.J. 64, 73 (1986).

 A-5569-17T4

This doctrine cannot be applied under the circumstances presented in the case at hand. Here, defendant baldly asserts that she had a "legal" and "moral" obligation" to ensure that S.P. and K.P. attended school and, therefore, she was obligated to go to the school and remain there until the children were readmitted.

However, it was certainly not necessary for defendant to trespass on school property in order to achieve that goal. Defendant's husband already had a pending lawsuit against the Archdiocese and the school, and his attorney was therefore able to file an application on February 2 to require the Archdiocese and STS to allow the children to return to class. While that application was unsuccessful, we granted Phillips' emergent application for a stay of the expulsion order the very next day. Thus, defendant's conduct was not justified by the defense of necessity.

V.

Defendant's remaining arguments are without sufficient merit to warrant extended discussion in a written decision. R. 2:11-3(e)(2). We add the following brief comments.

In Points III and IV, defendant claims that the provisions of the STS handbook that led to the expulsion of the children from the school were unenforceable and "violated [her] due process rights." However, the handbook

22

was not the basis for the criminal trespass charge in this case. Rather, defendant violated N.J.S.A. 2C:18-3(b) when she refused to leave the school premises after the school principal, the parish administrators, and three police officers directed her to do so. Because defendant had no license or privilege to remain on the property under those circumstances, the judge properly convicted her of defiant trespass under the statute.

In Point V, defendant argues that the judge erred by quashing a subpoena she sought to serve on Monsignor Thomas Nydegger, the Vicar General of the Archdiocese. Again, we disagree.

Monsignor Nydegger was not present at STS on February 2, 2017, and he had no personal knowledge of what transpired there on that date. Nevertheless, defendant alleged that the monsignor would be able to provide testimony on the issue of whether the Archdiocese, rather than STS, had the authority to expel the children.

However, as the judge found in quashing the subpoena, that issue was not germane to the criminal proceedings, especially since the school's principal, Deacon Caparoso, told defendant that she was not welcome on the school premises as soon as she entered the office that day. Therefore, we discern no basis for disturbing the judge's decision.

23

In Point I, defendant argues for the first time that the Archdiocese's and STS's attorney (the civil attorney) unethically took "an active role" in the criminal case. This argument is groundless.

On July 20, 2017, the civil attorney appeared at a public pre-trial hearing as an observer in the audience. The judge invited him to participate after defendant's attorney indicated that he would like to attempt to pursue an out-of-court resolution of the matter. After a brief on-the-record discussion between the attorneys, the prosecutor, and the judge, no agreement was reached.

At a subsequent hearing on August 14, 2017, the civil attorney was again present to observe, and the judge again invited him to discuss a possible resolution of the case. The civil attorney could not commit to anything because the parties were scheduled to receive the judge's verdict in the civil case later that day, and the attorney stated he was just there "to listen." On August 14, defendant's attorney also confirmed on the record that he had no objection to the civil attorney speaking at the hearing.[7] As the prosecutor made clear throughout

---

[7] Defendant's appellate appendix contains a copy of a draft of a "general release" under which defendant and Phillips would release any claims they might have against the Archdiocese and STS in the civil action in return for Father Bejgrowicz withdrawing his criminal complaint. This unsigned document was not introduced as an exhibit at trial, and there is nothing in the appellate record that explains the circumstances under which it was drafted or circulated.

the two conferences, he was solely responsible for the prosecution of the complaint against defendant.  Under those circumstances, we reject defendant's newly minted assertions.

We also reject the arguments defendant improperly raises for the first time in her reply brief[8] that the video recordings she submitted in support of her motion to vacate her conviction proved that the judge's verdict was incorrect. Although we granted defendant's motion to supplement the record on appeal to include the videos and the trial judge's order and opinion, defendant did not amend her notice of appeal to challenge the judge's denial of her motion to set aside the verdict.  "It is a fundamental [principle] of appellate practice that we only have jurisdiction to review orders that have been appealed to us."  State v. Rambo, 401 N.J. Super. 506, 520 (App. Div. 2008).  "[O]nly the judgment or orders designated in the notice of appeal . . . are subject to the appeal process and review."  1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004).  Therefore, this order is not properly before us.

---

Therefore, to the extent defendant attempts to rely on this document in support of her claims, those arguments plainly lack merit.  R. 2:11-3(e)(2).

[8]  See L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs., Inc., 434 N.J. Super. 60, 87 (App. Div. 2014) (holding that "[a]n appellant may not raise new contentions for the first time in a reply brief").

25

In any event, we discern no basis for disturbing the judge's March 30, 2020 order and accompanying statement of reasons. Contrary to defendant's claim in her reply brief, these videos were not "newly discovered." Indeed, defendant's attorney submitted a brief to the trial judge on March 17, 2020, that confirmed that "[t]hese recordings were made by Scott Phillips, [defendant's] husband, on the date [i]n question, February 2, 2017." And, as the judge found, the videos provided nothing that contradicted the credible testimony presented by the State's witnesses, or rehabilitated the "incredible" account provided by defendant.

Finally, defendant argues for the first time on appeal in Point II that the trial judge was "biased against" her because he told the civil attorney to "send his regards" to a partner at the attorney's law firm, advised the parties that he was familiar with the civil proceedings between Phillips and the school from reading a newspaper, and posted his decision on the Judiciary's website in order "to embarrass" her. Defendant also asserts that the judge had to be biased against her because he allegedly ignored exculpatory evidence in order to convict her.

We have canvassed the entire record in reviewing defendant's contentions on this point. Based upon this review, we conclude that the judge accorded

defendant a full opportunity to present evidence and arguments in support of her claims and explained the basis for each of his rulings in extensive detail. The judge treated defendant and her attorney in a respectful manner throughout the proceedings before him.

Appellate courts review legal arguments addressed to claimed errors by trial judges. Criticism of trial judges who made rulings adverse to the party filing an appeal do not constitute proper appellate argument. A party's contention that a trial judge was unfair or biased "cannot be inferred from adverse rulings against a party." Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) (citation omitted). Defendant lodged no complaint concerning the judge's handling of this matter until after she was unsuccessful at trial. Under these circumstances, we reject defendant's unsupported contentions of bias on the part of the judge.

To the extent that any of defendant's remaining contentions are not specifically addressed herein, we have concluded that they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5569-17T4